## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DANNIE BUCHANAN                            )
                                          )
                  Plaintiff,              )
                                          )
                                          )
            v.                            )        C.A. No. 24-1267-MN
                                          )               FILED
W.L. GORE & ASSOCIATES, INC.,             )
                                          )
                  Defendant.              )        JAN 2 1 2026

                                                  U.S. DISTRICT COURT DISTRICT OF DELAWARE

### REPORT AND RECOMMENDATION

Pending before the Court is Defendant's Motion to Dismiss the Complaint for Failure to

State a Claim (D.I. 19), which has been fully briefed. (D.I. 20, 23, 24). Plaintiff Dannie Buchanan

("Plaintiff") alleges that W.L. Gore & Associates, Inc. ("Defendant" or "Gore") engaged in

discriminatory employment practices in violation of the Age Discrimination in Employment Act

("ADEA"), Title VII of the Civil Rights Act ("Title VII"), and the Uniformed Services

Employment and Reemployment Rights Act ("USERRA"). Plaintiff also alleges breach of the

implied covenant of good faith and fair dealing, and a claim for defamation. For the following

reasons, I recommend that Defendant's Motion to Dismiss be GRANTED-IN-PART and

DENIED-IN-PART.

### I.    BACKGROUND

This dispute arises out of Defendant's alleged discrimination against Plaintiff on the basis

of age and race.[1] Plaintiff was hired full-time by Defendant in September 2021 as a Cybersecurity

---

[1]    In response to Defendant's Motion to Dismiss, Plaintiff voluntarily dropped both his
USERRA claim (Count V) and his claim for defamation (Count VI) from the Amended Complaint
("AC"). (D.I. 23 at 2). Accordingly, I recommend that Defendant's Motion to Dismiss with
respect to Count V and Count VI be granted.

Engineer. (D.I. 10 ¶¶ 9, 12). In February 2023, Plaintiff applied for a Cyber Security Architect position—a promotion with an increase in salary—but withdrew his application after his supervisor, Chuck Bartenbach ("Bartenbach"), encouraged him to do so; instead, he accepted a position as a Global Data Security Leader. (*Id.* ¶ 14). According to Plaintiff, he was unaware that, unlike the Architect position, the Leader position did not include a pay raise. (*Id.* ¶ 18). If he had known that, Plaintiff says, he would not have withdrawn his application for the Architect position. The Architect position thereafter was filled by a "significantly younger white male" with less experience. (*Id.* ¶¶ 17, 19, 25).

Plaintiff alleges that he was subjected to age, disability, and race-based discriminatory conduct and "verbal abuse" by Bartenbach "[t]hroughout his employment" and daily in both one-on-one and group settings. (*Id.* ¶¶ 20, 21). As a result of this treatment, Plaintiff filed his first internal complaint for hostile work environment with Defendant's human resources department in April of 2023. (*Id.* ¶ 22).

In August of 2023, Plaintiff "was informed" that the Leader position he had accepted did not include any additional compensation. (*Id.* ¶ 23). In September of 2023, Plaintiff filed another complaint with Defendant's human resources department alleging harassment, discrimination, lack of compensation, lack of transparency, and deceptive practices by Bartenbach. (*Id.* ¶ 27). In November of 2023, Defendant announced upcoming company restructuring and layoffs and identified Plaintiff as an impacted employee. (*Id.* ¶ 28). Around this time, Plaintiff noticed a spike in data infiltration at the company and informed Bartenbach of what he had seen. Thereafter, Plaintiff again raised concerns about data infiltration to Bartenbach, as well as another individual, and raised concerns about Defendant's alleged failure to implement an appropriate data breach protocol. (*Id.* ¶ 34). Plaintiff was placed on administrative leave two hours later (*id.*) and was

terminated on February 1, 2024, for violating of Defendant's "Acceptable Use Policy and Associates Standard of Ethical Conduct." (*Id.* ¶ 35).

Plaintiff filed his charge with the Equal Employment Opportunity Commission ("EEOC") on or about March 2, 2024. (*Id.* ¶ 6). According to Plaintiff, while responding to the charge, Defendant told the EEOC that it terminated Plaintiff's employment for "hack[ing] into Defendant's computer network and st[ealing] confidential data," which Plaintiff maintains he did not do. (*Id.* ¶ 35). Plaintiff further alleges "upon information and belief" that this falsified write-up had been placed into Plaintiff's personnel file and was "ultimately used as an excuse to terminate his employment." (*Id.*; *see also* ¶ 83 ("Defendant placed these false accusations into Plaintiff Buchanan's personnel file and created [] fictitious grounds for termination.")).

## II.    LEGAL STANDARD

In reviewing a motion filed under Rule 12(b)(6), the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). The complaint need not contain detailed factual allegations, but conclusory allegations and "formulaic recitation[s] of the elements of a cause of action" are insufficient to give the defendant fair notice of the nature of and grounds for the claim. *Twombly*, 550 U.S. at 555. The complaint must contain facts sufficient to show that a claim has "substantive plausibility." *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). While this plausibility standard requires more of the complaint than allegations

supporting the mere possibility that the defendant is liable as alleged, plausibility should not be taken to mean probability. *Twombly*, 550 U.S. at 545. A claim is facially plausible, and the standard is satisfied, when the claim's factual allegations, accepted as true, allow the court to reasonably infer that the defendant is liable as alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 1948 (2009).

## III.    DISCUSSION

Defendant moved for dismissal under Rule 12(b)(6) for all Counts in Plaintiff's "Original" and "Second" Complaints for failure to timely serve under Rule 4(m). (D.I. 20 at 1). At oral argument on December 2, 2025, I exercised my discretion to grant Plaintiff's request (D.I. 13) for a retroactive motion for extension of time to serve, and I set forth the rationale for my decision during the hearing. As a result of my December 2, 2025 order, much of Defendant's motion to dismiss is now mooted, as the timeliness of service issue was retroactively cured and the operative pleading is the Amended Complaint. Two of Defendant's arguments remain, however: (i) that Plaintiff's failure to promote claims under Title VII and the ADEA were not timely raised before the EEOC; and (ii) that Plaintiff's breach of the implied covenant of good faith and fair dealing claim should be dismissed for various reasons. I address each below.

### a.  Counts I and II (in part): Failure to Promote

Defendant argues that Plaintiff's failure to promote claims under the ADEA and Title VII are barred because they were not raised within 300 days to the EEOC. (D.I. 20 at 8–9). Generally, a "complaint under the ADEA will be dismissed for failure to exhaust administrative remedies if a supporting EEOC charge was not filed within [] 300 days . . . of notification to the employee of the adverse employment action." *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 382 (3d Cir. 2007). Plaintiff does not appear to dispute that his failure to promote claims were not timely

raised to the EEOC. (D.I. 23). Instead, Plaintiff counters that his failure to promote claims are not barred (despite being untimely) because they were equitably tolled. (*Id.* at 10). As set forth below, the well pleaded facts of the Amended Complaint, taken as true, do not support equitable tolling.

It is well-established that federal courts should invoke the equitable tolling doctrine "'only sparingly[.]'" *U.S. v. Midgley,* 142 F.3d 174, 179 (3d Cir. 1999) (quoting *Irwin v. Dep't of Veterans Affs.,* 498 U.S. 89, 96 (1990)). In the Third Circuit, equitable tolling may be appropriate in certain limited contexts, including: (1) if the defendant actively misled the plaintiff; (2) if the plaintiff was prevented, in some extraordinary way, from asserting his rights; (3) or if the plaintiff timely asserted his rights mistakenly in the wrong forum.[2] *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir. 1999). In each of these contexts, the party seeking equitable tolling must have demonstrated reasonable diligence in investigating and filing his claims. *New Castle Cnty. v. Halliburton NUS Corp.,* 111 F.3d 1116, 1126 (3d Cir. 1997) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1390 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc)).

As the basis for equitable tolling of the failure to promote claims, Plaintiff asserts that he was "not made aware that his position did not include additional financial compensation until August 2023." (D.I. 23 at 12). At oral argument, however, counsel confirmed that Plaintiff had not asserted any facts in the Amended Complaint that Defendant "actively misled" Plaintiff, or that the Plaintiff was prevented, "in some extraordinary way" from timely asserting his rights or discovering the lack of pay increase. (Transcript of December 2, 2025 Oral Argument at 9:16–10:1). Plaintiff could have inquired at any time prior to withdrawing his application, or shortly

---

[2]    Improper forum is not at issue in this case.

thereafter, as to the facts and circumstances surrounding the Leader position. He chose not to do so. Further, he chose not to do so in the face of alleged non-stop harassment throughout the duration of his employment with Defendant, and despite having filed his first hostile work complaint in April of 2023. (D.I. 10 ¶ 23). Plaintiff does not explain how he was nevertheless reasonably diligent under the circumstances. Equitable tolling cannot save Plaintiff's failure to promote claims. I recommend that Count I and the portion of Count II asserting failure to promote under Title VII be dismissed.

### b. Count VII: Implied Covenant of Good Faith and Fair Dealing

Plaintiff asserts a claim for breach of the implied covenant of good faith and fair dealing under Delaware law. (D.I 23 at 13–15). Defendant argues that because Plaintiff worked remotely from Florida, the laws of Florida apply. (D.I. 20 at 13 n.9). Under Florida law, an at-will employee cannot bring a claim for breach of the implied covenant of good faith and fair dealing unless the plaintiff can point to specific contractual provisions that were breached. *See Chalfonte Condo. Apartment Ass'n, Inc v. QBE Ins. Corp.*, 695 F.3d 1215, 1225 (11th Cir. 2012) (while Florida recognizes an implied covenant of good faith and fair dealing for at-will employees, its application requires an "accompanying action for breach of an express term of the agreement.") (citing *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.,* 785 So.2d 1232, 1234 (Fla. 4th DCA 2001). Delaware law permits a claim for breach of the implied covenant in an at-will employment situation under certain limited circumstances. *Carroll v. ABM Janitorial Servs.-MID Atl., Inc.*, 970 F. Supp.2d 292, 301 (D. Del. 2013) (listing the limited circumstances). Thus, there is a substantive conflict between the laws of Florida and Delaware as it relates to a claim for a breach of the implied covenant of good faith and fair dealing in the employment context in an at will employment setting.

Defendant further argues that, even if Delaware law applies, Plaintiff has failed to state a claim for breach of the implied covenant. I disagree.

To determine which state's law applies, I must conduct a choice of law analysis. Defendant suggests, without support, that the choice of law analysis for a breach of the implied covenant of good faith and fair dealing claim in this case is "a tort claim" such that Restatement (Second) Torts applies, and the focus of the inquiry is on the "law of the state where the injury occurred." (D.I. 20 at 13). Plaintiff does not take a contrary position. (*See* D.I. 23 at 13 (citing to Restatement (Second) Conflict of Laws § 145(2) (for torts))). Nevertheless, it is not clear to me that Restatement (Second) Torts should apply over Restatement (Second) Conflict of Laws, § 188(2) (for the absence of an effective choice of law by the parties). *See, e.g.*, *Custer v. Newroads, Inc.*, 2003 WL 22680918, at *5 (D. Del. Nov. 13, 2003) ("A claim for breach of the implied covenant of good faith and fair dealing is contractual in nature[]" applying Restatement (Second) Conflict of Laws § 188(2)) (citing *E.I. DuPont De Nemours & Co. v. Pressman*, 679 A.2d 436, 442–44 (Del. Ch.1996); *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 586 (Del. Ch. 1994); *Zwanenberg Food Grp. (USA) Inc. v. Tyson Refrigerated Processed Meats, Inc.*, 2009 WL 528700, at *4 (D. Del. Feb. 27, 2009) ("Under Delaware law, every contract claim contains an implied covenant of good faith and fair dealing . . ."); *Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 830 (Del. 2005) ("every employment contract contains an implied covenant of good faith and fair dealing"). It makes little sense to me that a breach of the implied covenant claim would be a tort in this situation. Thus, I will apply the analysis set forth in § 188(2) of the Restatement (Second) Conflict of Laws.[3]

---

[3]    Whether guided by the contract-based or tort-based choice of law analysis, the result is the same: Delaware law applies. The parties tacitly agree that the Restatement (Second) Conflict of Laws, § 145(2), which is focused on torts, asks the Court to consider four factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the

Section 188(2) of the Restatement sets forth the following factors to consider when determining the applicable law: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. Restatement (Second) of Conflict of Laws § 188(2). The Restatement calls for weighing the factors identified in § 188(2) in light of the following broader considerations set forth in § 6: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. *See* Restatement (Second) Conflict of Laws § 188.

Here, Plaintiff was employed by a company located and incorporated in Delaware, worked for the company's Delaware sites remotely from Florida, his supervisors and the job sites on which

---

domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. (D.I. 20 at 13 (not addressing the factors)); (D.I. 23 at 13 (citing the factors)); (D.I. 24 at 5–7 (not disputing the factors proffered by Plaintiff)). Even under these factors, at the motion to dismiss stage, Delaware law applies. Defendant only addresses one factor—the place where the injury occurred—but does not offer argument on or address the remaining factors, and does not explain why in this case the injury occurred in Florida. Certainly, it is undisputed that Plaintiff was located in Florida at the time that Defendant took the alleged actions leading to his claim for breach of the implied covenant, but the conduct that caused the injury occurred in Delaware. Defendant fails to engage with this fact and its legal significance, or lack thereof. Nor does Defendant address that the place of incorporation and place of business of the Defendant is Delaware, or that the place where the relationship between the parties is in Delaware. In fact, Defendant relies entirely on the fact that Plaintiff was located, and is now a resident, in Florida. Taken together with the facts set forth in § 6 of the Restatement (Second) (*see, e.g., Schmidt v. Washington Newspaper Publ'g Co., LLC,* (2019 WL 4785560, at *3 (Del. Sup. Ct. Sept. 30, 2019) (applying § 145 and § 6 to determine which state has the most significant relationship to the occurrence and the parties), as set forth in connection the § 188(2) analysis (*see infra* pp. 8–9), Delaware law applies.

he worked were located in Delaware, and his personnel and other employment records were kept in Delaware. (D.I. 10 ¶¶ 9, 10); (D.I. 23 at 7 n.2). Additionally, he reported to his supervisors and his team in Newark, Delaware. (D.I. 23 at 15); (D.I. 24 at 6 (not contesting that Plaintiff reported to his supervisor and team in Newark)). According to the Amended Complaint, all of the unlawful employment practices and discrimination were committed within the State of Delaware. (D.I. 10 ¶¶ 4, 37). Additionally, the lone contract to which the parties refer—the Service Agreement— expressly states that Delaware law should apply and govern any dispute arising therefrom. (D.I. 23 at 14); (D.I. 24 at 5). Though the import of the contract is disputed between the parties at this stage, it is at least indicative that the parties had a reasonable expectation that Delaware law would apply altogether such that for the "protection of justified expectations" Delaware law should control. Moreover, in weighing the relative interests of Florida versus Delaware, there is nothing to suggest that Florida has a greater interest in this matter than Delaware. Taken together, considering the factors set forth in § 188(2) and in light of those in § 6, it appears that the state with the "most significant relationship" to the occurrence and the parties is Delaware, not Florida. In fact, the only connection to Florida is that Plaintiff resided there at the time of the alleged conduct, which took place in Delaware. Defendant cites no cases supporting its apparent view that every other factor should be ignored in favor of the location of the Plaintiff at the time the alleged bad acts took place. Delaware law applies.

Under Delaware law, every contract contains an implied covenant of good faith and fair dealing requiring the parties to the contract "to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the contract." *HSMY, Inc. v. Getty Petroleum Mktg., Inc.,* 417 F.Supp.2d 617, 621 (D. Del. 2006) (internal citation omitted); *see also* Restatement (Second) of Contracts, § 205 (1981).

9

Nevertheless, Delaware's at-will employment doctrine "generally permits the dismissal of employees without cause and regardless of motive." *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 437 (Del. 1996). As a result, the implied covenant of good faith and fair dealing is only applicable in at-will employment relationships in limited circumstances. Of those circumstances, the parties agree that only one applies here: where "the employer falsifies or manipulates employment records to create fictitious grounds for termination." *Carroll* 970 F. Supp.2d at 301.

This exception is narrow. It is not enough for a plaintiff to allege that an employer manufactured a false reason for termination and then later memorialized that false reason in writing; rather, a plaintiff must allege that the employer falsified a record and then used that falsified record as the basis for termination. *Bomberger v. Benchmark Builders, Inc.*, 2017 WL 1377595, at *3 (D. Del. Apr. 13, 2017) ("[Defendant's] conduct, however, amounted to no more than a memorializing of its false reasons for termination in writing. This is insufficient to sustain a claim for breach of the implied covenant."). Instead, an employer must "actually falsify or manipulate employment records to create fictitious grounds for termination." *Id.*

Defendant argues that Plaintiff's Amended Complaint merely states that Defendant manufactured a false reason for termination and then later memorialized that false reason in writing. A review of the allegations in the Amended Complaint shows that this is not true. Plaintiff's allegations relating to Defendant's alleged falsification of records are set forth in several paragraphs in the Amended Complaint. In paragraph 35 of the Amended Complaint, Plaintiff avers that, "[u]pon information and belief, this statement [that Plaintiff hacked into Defendant's computer network] was placed into Plaintiff Buchanan's Personnel file and ultimately used as an excuse to terminate his employment." (D.I. 10 ¶ 35). "Upon information and belief, Defendant

placed these false accusations into Plaintiff Buchanan's personnel file and created a fictitious ground[] for termination." (*Id.* ¶ 83). "Defendant breached its implied obligation not to falsify or manipulate employment records to create fictitious grounds for termination." (*Id.* ¶ 85). "For example, as a direct result of the falsification and manipulation of Plaintiff's employment records Defendant created fictitious grounds for termination and wrongfully terminated Plaintiff's employment on or about February 1, 2024, and such fictitious grounds were believed by the EEOC such that the EEOC ruled against Plaintiff Buchanan." (*Id.* ¶ 87). Each of these statements temporally pleads that first Defendant falsified records and then those records were later used to justify Plaintiff's termination. Stated differently, it is at least a reasonable inference that Defendant manipulated or falsified Plaintiff's employment records to create fictitious grounds for termination.

In response to these allegations, Defendant argues that they nevertheless aren't sufficient to state a claim because, according to Defendant, he was going to be terminated due to company restructuring anyway. (D.I. 20 at 16). When Plaintiff responds that "he was not placed into another position during restructuring because [] this allegedly false statement" was placed in his personnel records, Defendant merely criticizes that the Amended Complaint does not detail in what *specific* records the statement was included in. But this case is at the motion to dismiss stage, and Defendant alone is in possession of the specific facts that it criticizes Plaintiff for being unable to include in his notice pleading. It is enough for Plaintiff to plead at this stage, as he has done, that: (i) false statements were fabricated, (ii) the false statements were included in Plaintiff's personnel records, and (iii) Defendant relied on these fabricated records as justification for termination. Moreover, it is reasonable, at this stage, to read the Amended Complaint as alleging that the inclusion of this false statement caused Plaintiff to not be hired into any of the alternative positions

safe from company restructuring. Although the allegations could be more detailed and will likely need to be bolstered to survive scrutiny beyond the motion to dismiss stage, they are sufficient for now. Defendant cites no authority to the contrary.

Accordingly, I recommend that Defendant's motion to dismiss as to Count VII be denied.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Defendant's Motion to Dismiss for failure to state a claim be DENIED-IN-PART and GRANTED-IN-PART. Plaintiff agreed to withdraw his claims for violations of USERRA and Defamation, thus, I recommend that Defendant's motion to dismiss Counts V and VI be GRANTED. I also recommend that Count I and the portion of Count II asserting failure to promote under Title VII be GRANTED. With respect to Count VII, I recommend that the motion be DENIED. And with respect to the remainder of Defendant's motion to dismiss, I recommend that those arguments be DENIED as moot in light of my December 2, 2025 order.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and D. Del. LR 72.1. Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages. Any response shall be filed within fourteen days thereafter and limited to ten pages. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: January 21, 2026

_____
Laura D. Hatcher
United States Magistrate Judge